UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILARIO ARTURO CHICHIL, | No. C 05-1958 SI (pr) |
| Petitioner, | **ORDER DENYING HABEAS PETITION** |
| v. | |
| A. KANE, warden, | |
| Respondent. | |

## INTRODUCTION

Hilario Arturo Chichil, a prisoner at the Correctional Training Facility in Soledad, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the pro se habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Hilario Arturo Chichil was convicted in Los Angeles County Superior Court of kidnapping for ransom, conspiracy, robbery of an inhabited house, and first degree burglary. He was sentenced to life imprisonment with the possibility of parole plus eight years imprisonment in 1987. His habeas petition does not concern that conviction directly, but instead focuses on a September 16, 2002 decision by a panel of the Board of Prison Terms ("BPT") finding him not suitable for parole.

The BPT identified several factors in support of its determination that Chichil was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if he was released. The factors identified included the circumstances of the offense, his

unstable social history, an escalating pattern of criminal conduct, and his need for additional self-help therapy. The BPT also relied on opposition to parole from the L.A. County District Attorney's Office. The specifics regarding the crime and the circumstances supporting the finding of unsuitability are described in the Discussion section later in this order.

Chichil sought relief in the California courts. The Los Angeles County Superior Court denied his petition for writ of habeas corpus in 2004 in a reasoned order. See Petition, Exhibits at 121-122. The California Court of Appeal denied Chichil's petition for writ of habeas corpus in a two-paragraph order. Id. at 124. The California Supreme Court summarily denied his petition for writ of habeas corpus. Id. at 125.

Chichil then filed his federal petition for a writ of habeas corpus. The petition alleged that Chichil's right to due process was violated because the BPT's denial of parole had insufficient evidentiary support. After an unsuccessful motion to dismiss, respondent filed an answer. Petitioner filed a traverse. The matter is now ready for a decision on the merits.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged action occurred at the Correctional Training Facility in Soledad, in Monterey County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

**EXHAUSTION**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claim asserted in the petition.

2

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Williams (Terry) v. Taylor, 529 U.S. 362, 409-13 (2000). Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

**DISCUSSION**

A.   Due Process Requires That Some Evidence Support a Parole Denial

A California prisoner with a sentence of a term of life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. See Sass, 461 F.3d at 1127-28; Board of Pardons v. Allen, 482 U.S. 369 (1987); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979); Cal. Penal Code § 3041(b).

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. Sass, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)). "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. Id. at 1128 (quoting Superintendent v. Hill, 472

1 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" Id. at 1129 (quoting Superintendent v. Hill, 472 U.S. at 457). The some evidence standard of Superintendent v. Hill is clearly established law in the parole context for purposes of § 2254(d). Sass, 461 F.3d at 1129.

Furthermore, and of key importance, the parole board is not precluded from relying on unchanging factors such as the circumstances of the commitment offense or the petitioner's pre-offense behavior in determining parole suitability. See id. at 1129 (commitment offenses in combination with prior offenses provided some evidence to support denial of parole). The familiar argument that the BPT cannot rely on these factors is based on the Ninth Circuit's statements in Biggs v. Terhune, 334 F.3d 910 99th Cir. 2003), that suggested that the value of the criminal offense fades over time as a predictor of parole suitability: "The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered. . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at 916-17. In Biggs, the Ninth Circuit upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that "[o]ver time . . . , should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole." Id. at 916. These statements were dicta and not clearly established federal law as set forth by the Supreme Court, such that the state court's refusal to adopt the Biggs reasoning would be a decision contrary to, or an unreasonable application of, clearly established federal law as set forth by the Supreme Court. The Ninth Circuit recently backed away from the Biggs statements, and confirmed that these statements from Biggs were dicta and were inappropriate under § 2254. See Sass, 461 F.3d at 1129. "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." Sass, 461 F.3d at 1129.    What little guidance has come

4

1 from the Supreme Court suggests that judicial review should be extremely deferential to the
2 original decision-maker in the parole context.  In addition to the very low evidentiary standard
3 that Superintendent v. Hill imposes, other Supreme Court comments suggest that the judiciary
4 should be quite mindful of the subjective and predictive nature of a parole board's decision.  See
5 Greenholtz, 442 U.S. at 13.  "No ideal, error-free way to make parole-release decisions has been
6 developed; the whole question has been and will continue to be the subject of experimentation
7 involving analysis of psychological factors combined with fact evaluation guided by the practical
8 experience of actual parole decisionmakers in predicting future behavior.  Our system of
9 federalism encourages this state experimentation."  Id.; see also id. at 8.

10       Past criminal conduct is not some arbitrary factor like eye color that has nothing to do
11 with present dangerousness.  Recidivism concerns are genuine.  See Ewing v. California, 538
12 U.S. 11, 26 (2003) (O'Connor J.) (noting a report stating that over 60% of violent offenders were
13 arrested again within three years of their release).  California's parole scheme does not offend
14 due process by allowing the BPT to predict that an inmate presents a present danger based on
15 a crime he committed many years ago.

16       Having determined that there is a due process right, and that some evidence is the
17 evidentiary standard for judicial review, the next step is to look to state law because that sets the
18 criteria to which the some evidence standard applies.  One must look to state law to answer the
19 question, "'some evidence' of what?"

20

21 B.     State Law Standards For Parole For Kidnappers In California

22       California uses indeterminate life sentences for persons convicted of kidnapping for
23 ransom where the victim does not suffer death or bodily harm.  See Cal. Penal Code § 209(a).
24 California's parole scheme described below provides that a release date normally must be set
25 unless various factors exist, but the "unless" qualifier is substantial.

26       A BPT panel meets with an inmate one year before the prisoner's minimum eligible
27 release date "and shall normally set a parole release date. . . . The release date shall be set in a
28 manner that will provide uniform terms for offenses of similar gravity and magnitude in respect

5

to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." Cal. Penal Code § 3041(a). Significantly, that statute also provides that the panel "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b).

One of the implementing regulations, 15 Cal. Code Regs. § 2281, allows for consideration of a wide range of information in determining suitability, see § 2281(b), and lists circumstances tending to show suitability and circumstances tending to show unsuitability, § 2281(c) and (d).[1] The regulation also provides that "[t]he panel shall first determine whether a prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2281(a).

The regulations contain a matrix of suggested base terms for several categories of crimes. See 15 Cal. Code Regs. § 2282. For example, for kidnapping for robbery or ransom, the matrix of base terms ranges from the low of 8, 10, or 12 years to a high of 13, 15, or 17 years,

---

[1] The listed circumstances tending to show unsuitability for parole are the nature of the commitment offense, i.e., whether the prisoner committed the offense in "an especially heinous, atrocious or cruel manner;" the prisoner has a previous record of violence; the prisoner has an unstable social history, the prisoner previously engaged in a sadistic sexual offense, the prisoner has a lengthy history of severe mental problems related to the offense; and serious misconduct while in prison. 15 Cal. Code Regs. § 2281(c). The listed circumstances tending to show suitability for parole are the absence of a juvenile record, stable social history, signs of remorse, a stressful motivation for the crime, whether the prisoner suffered from battered woman's syndrome, lack of criminal history, the present age reduces the probability of recidivism, the prisoner has made realistic plans for release or developed marketable skills, and positive institutional behavior. 15 Cal. Code Regs. § 2281(d). The circumstances listed as tending to show unsuitability and suitability "are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." 15 Cal. Code Regs. § 2281(c) and (d).

6

depending on some of the facts of the crime.[2] Some prisoners estimate their time to serve based only on the matrix. However, going straight to the matrix to calculate the sentence puts the cart before the horse because it ignores critical language in the relevant statute and regulations that requires him first to be found suitable for parole.

The statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity. In re Dannenberg, 34 Cal. 4th 1061, 1070-71 (Cal.), cert. denied, 126 S. Ct. 92 (2005). Under state law, the matrix is not reached unless and until the prisoner is found suitable for parole. See id. at 1070-71 (discussing use of matrix in murder cases); 15 Cal. Code Regs. § 2282(a) ("[t]he panel shall set a base term for each life prisoner who is found suitable for parole"). The California Supreme Court's determination of state law in Dannenberg is binding in this federal habeas action. See Hicks v. Feiock, 485 U.S. 624, 629-30 (1988).

The California Supreme Court also has determined that the facts of the crime alone can support a sentence longer than the statutory minimum even if everything else about the prisoner is laudable. "While the Board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (Cal. 2002), cert. denied, 538 U.S. 980 (2003) ("[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole" but might violate due process "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense").

---

[2]One axis of the matrix concerns the kind of harm done to the victim and the other axis of the matrix concerns the circumstances of the kidnapping. The choices on the axis for the harm to the victim include no/minor harm, victim sexually or otherwise seriously assaulted, victim suffered major injuries, or victim died. The choices on the axis for the circumstances of the kidnapping are minor movement, extensive movement, victim taken hostage, and intricate prior planning for the crime. 15 Cal. Code Regs. § 2282(c).

C. <u>Some Evidence Supports The BPT's Decision In Chichil's Case</u>

The BPT identified several factors supporting its decision to find Chichil unsuitable for parole, i.e., the circumstances of the offense, the prisoner's unstable social history and escalating pattern of criminal conduct, and the prisoner's need for additional self-help therapy. The Los Angeles County Superior Court upheld the decision in a reasoned order. <u>See</u> Petition, Exhibits at 120-22. The Los Angeles court stated that some evidence had to support the decision and found that some evidence did support the decision, even though one of the circumstances (i.e., the BPT's finding of an unstable social history), was not supported by some evidence. <u>See id.</u> at 121. The state court applied the correct legal standard, as evidenced by its citation to <u>In re Rosenkrantz</u>, 29 Cal. 4th at 667, which had cited and adopted the <u>Superintendent v. Hill</u> some evidence standard as the proper standard for judicial review of evidentiary sufficiency for parole denial cases. <u>See</u> <u>Rosenkrantz</u>, 29 Cal. 4th at 665-67. The California Court of Appeal denied Chichil's petition for writ of habeas corpus in a two-paragraph order that one would be hard-pressed to call a reasoned decision except that it did say the BPT legally could and actually did rely on the nature of the offense to deny parole. <u>See</u> Petition, Exhibits at 124.

    1. <u>Commitment Offense</u>

The BPT considered the circumstances of the kidnapping for ransom and concluded that it was an carried out in an especially cruel and callous manner. The BPT determined that the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering and was for a trivial or inexplicable motive in that it was done for greed. Chichil had participated in the kidnapping of the victim and holding him for ransom. Chichil had used a gun during the offense. The probation officer's report had described the basic facts of the crime:

> On December 8, 1985, at about 4 o'clock in the morning, the defendant went to the home of the victim, Leonardo Madrid Lopez, the former owner of "Casa Lopez" restaurant. The victim was coming home with a bag, containing the night's receipts ($1,600). The defendant, armed with a pistol, forced his way into the partially-open front door of the victim. The defendant pointed the gun at the victim and forced him to walk to a getaway car that was stationed a couple of blocks away. In the car, the victim was blindfolded. tied and beaten. The victim was also taken to an unknown location where he was robbed

8

of his wallet and over $10,000 in cash. He was forced to make tape recordings regarding a $250,000 ransom demand. During that time, he was also forced to give details regarding the names and addresses of family members in the event that the perpetrators were arrested. After about 18 hours, the victim was released on his promise to make a drop of $100,000 at the "Bob's" restaurant in North Hollywood. The first drop was not picked up. A second drop was arranged for on December 16, after the victim and his family had received more phone calls and threats.

Resp. Exh. 4, pp. 2-3. The money was picked up by a co-defendant and police apprehended three co-defendants. Meanwhile, Chichil had fled town. He later was arrested on a warrant. The jury found "not true" a sentence enhancement allegation that the victim suffered bodily harm, and Chichil denied that he had beaten the victim.

Chichil downplayed his involvement in the crime, saying he was only the driver of the getaway car and waited a couple of blocks away from Lopez's house, drove the group to a hotel when they brought Lopez to the car, and sat with the victim for several hours while the other defendants went to make the ransom demand. RT 11-12. He also said the crime had been attempted on two nights, and on the first night he didn't even know what crime was to be committed. RT 10. The BPT was not required to accept Chichil's version of the crime.

In discussing the crime, Chichil explained that he had been motivated in part by pride: the co-defendants told him they needed a driver and he went along with the plan because he did not want to appear to be a coward. RT 21-22. He also said later in the hearing that he had become involved in crimes (presumably including the kidnapping) because he owned a muscle car and was a good driver and was flattered when other criminals told him they had seen his driving skills and thought he was capable of getting away from police. See RT 24-25.

The BPT considered a circumstance and factors proper under California law. A circumstance tending to indicate unsuitability for parole is that the prisoner "committed the offense in an especially heinous, atrocious or cruel manner." 15 Cal. Code Regs. § 2281(c)(1). The factors to be considered in determining whether that circumstance exists are that there were multiple victims, "[t]he offense was carried out in a dispassionate and calculated manner, such as an execution-style murder," "[t]he victim was abused, defiled or mutilated during or after the offense," "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and "[t]he motive for the crime is inexplicable or very trivial in

9

1  relation to the offense." 15 Cal. Code Regs. § 2281(c)(1).

3  There was some evidence in the record to support the BPT's determination that the circumstances of the commitment offense indicated unsuitability. The record supported a determination that offense was committed in a way that demonstrated an exceptionally callous disregard for human suffering. The victim was kidnapped when he was arriving home from work in the early morning hours, was hit by Chichil – a fact for which the probation officer's report provided evidentiary support, even if the jury had not found the sentence enhancement allegation of bodily harm true beyond a reasonable doubt – and was kept at gunpoint by Chichil for several hours while the co-defendants delivered the ransom demands. It cannot be said that there was not some evidence to support the finding that the circumstances of the offense supported the denial of parole. The BPT identified more than the minimum elements of a kidnapping when it determined that Chichil committed the kidnapping in a very cruel manner and with an exceptionally callous disregard for human suffering, as the kidnapping took place on the second attempt, Chichil used a gun during it, and beat the victim in addition to robbing him. The evidence of extensive planning, use of a gun, and physical abuse of the victim would be more than the minimum elements of a kidnapping for ransom. See Dannenberg, 34 Cal. 4th at 1071.

There also was evidence that the motive for the crime was trivial. Although the commissioner specifically mentioned in the decision that greed was a motive, the discussion at the hearing focused not on greed but on the fact that Chichil claimed to have become involved in the crime just because the co-defendants appealed to his pride in his car-driving skills. Pride in one's driving skill would be a trivial motive to kidnap someone for ransom.

### 2. Pre-Offense Behavior

The BPT also relied on Chichil's pre-offense history. The BPT found that Chichil had a history of unstable or tumultuous relationships with others in terms of illegal entry into the United States and had an unstable social history. Like the Los Angeles court, See Petition,

1   Exhibits at 121, this court does not see the illegal entry into the United States to be evidence of
2   an unstable social history. The BPT's recitation of numerous offers of support from family and
3   friends actually suggests that Chichil had a favorable social history. There was not some
4   evidence to support the determination that his social history tended to show he was unsuitable.

5   The BPT also relied on Chichil's criminal history as supporting its finding that he was
6   unsuitable for parole. Chichil had no juvenile record, but several encounters with the criminal
7   justice system as an adult. He had been put on probation in 1981 for possession of dangerous
8   weapons. He was arrested and released in 1982 for illegal entry into the United States. He was
9   arrested twice in 1985 for driving under the influence of alcohol.

10  Consideration of and reliance on Chichil's pre-offense criminal history was not improper.
11  Although the prisoner's "previous record of violence" on a victim is a specifically listed
12  circumstance and non-violent criminal history is not specifically listed as a circumstance that
13  tends to indicate unsuitability, 15 Cal. Code Regs. § 2281(c)(2), the list of circumstances in §
14  2281(c) is non-exclusive, and § 2281(b) specifically allows the BPT to consider a great range
15  of relevant and reliable information, such as the prisoner's "past criminal history, including
16  involvement in other criminal misconduct which is reliably documented." Chichil's prior
17  criminal activity could be considered by the BPT as tending to show unsuitability.

18
19       3.    <u>In-Prison Behavior</u>

20  The BPT found that Chichil had not participated sufficiently in beneficial self-help and
21  therapy programming at this time. The BPT believed that he "still needs therapy in order to face,
22  discuss, understand and cope with stress in a non-destructive manner so that he can [inaudible]
23  better understanding of his culpability as well as the causative factors of why he's here before
24  us today." RT 53.

25  Consideration of and reliance on Chichil's prison behavior and progress was not improper.
26  Section 2281(b) specifically allows the BPT to consider a great range of relevant and reliable
27  information, such as the prisoner's "past and present attitude toward the crime," social history
28  and mental state. The BPT panel member's comment that Chichil needed to gain a better

11

understanding of his culpability appears to have been a reference to the inconsistency between the descriptions of Chichil's role in the crime: Chichil had described himself as a peripheral member of the criminal conspiracy while the district attorney and the probation officer's report indicated that he was the central figure in the kidnapping. The BPT's finding that he needed further work on his understanding of his involvement in the crime was supported by some evidence.

Chichil argues that the BPT adopted his view that he had a limited role in the kidnapping and therefore he does not need further work in understanding his involvement in the crime. The court disagrees. A BPT member said that Chichil did not have to change his story about what happened in the kidnapping, but that does not mean that Chichil's version was adopted by the panel. See RT 54-55. The BPT member's statement was simply an acknowledgment of the policy that an inmate does not need to speak, admit the crime, or agree with the state's recitation of the facts of the crime. To say that the prisoner does not have to change his story about the crime is not the same as saying one agrees with that story.

### 4. There Was Enough Evidence To Support The Decision

The BPT noted that Chichil had various in-prison achievements, but concluded that the positive factors did not outweigh the factors showing unsuitability. The nature of the commitment offense, the increasing criminality, and the need for further programming factors listed by the BPT in support of its determination that Chichil was not suitable for parole had some evidentiary support. And the factors were factors that could be considered in determining parole suitability. There was no constitutional violation in the decision that Chichil was unsuitable for parole. Chichil is not entitled to the writ.

## CONCLUSION

For the foregoing reasons, the petition is denied on the merits. The clerk shall close the file.

IT IS SO ORDERED.                                         *Susan Illston*

DATED: October 20, 2006

                                                    SUSAN ILLSTON
                                            United States District Judge